## *In re* LEO HEM BOW.

*(District Court, D. Washington, N. D.   August 20, 1891.)*

1. DEPORTATION OF CHINESE.
     Act Cong. Oct. 1, 1888, (25 St. 504,) re-enacts and extends the twelfth section of the original Chinese restriction act, (22 St. 61,) which provides for the removal from the United States of any Chinese person found to be not lawfully entitled to enter or remain in the United States to "the country from whence he came." The thirteenth section of the act of September 13, 1888, (25 St. 479,) is to the same effect.

2. SAME.
     The words "country from whence he came," as used in the several acts of Congress providing for the deportation of Chinese persons found to be not lawfully entitled to remain in the United States, do not refer exclusively to the empire of China.

3. SAME—REVIEW ON HABEAS CORPUS.
     An order of a United States commissioner that a Chinaman be deported to the empire of China, based upon a finding that that is the country from whence he came, will not be reviewed by the district court, upon a proceeding by a writ of *habeas corpus*, where the petitioner alleges no illegality in the decision of the commissioner other than error in said finding.

4. SAME.
     But the petitioner, being cognizant of important facts relating to persons held to answer for alleged violations of United States laws, the court, on application of the United States attorney, vacated the judgment of the commissioner, and

required the petitioner to be held as a witness, and ordered that, when discharged as a witness, he be deported to British Columbia, that being shown by the evidence to be in fact the country from whence he came.

*(Syllabus by the Court.)*

Petition of Leo Hem Bow for a writ of *habeas corpus.*

*W. H. White,* for petitioner.

*P. H. Winston,* U. S. Atty.

HANFORD, J.   From the evidence adduced before me, I find as a matter of fact that the petitioner is a native of the empire of China, and a laborer.   For a period of nearly three years preceding his arrest he has been continuously a resident of British Columbia, in which country he was engaged in business on his own account as a barber.   Having entered the United States clandestinely, and being a person not lawfully entitled to remain in this country, the law[1] requires that he shall be removed to the "country from whence he came."   What is to be deemed the country from whence he came, within the meaning of the exclusion act?   To this question exclusively the arguments of counsel have been directed.   There is, however, a question as to the power of the court in this proceeding to review the decision of the commissioner, who, after an examination, has decided as a fact that the empire of China is the country from whence the petitioner came, and issued a writ in due form for his removal thither.   The United States attorney argues that as a matter of law every Chinese laborer found to be unlawfully in the United States must be deported to China; in other words, that the act must be construed by substituting the words "empire of China" for the words "the country from whence he came."   I hold, however, that such construction is unwarranted.   Manifestly, the law was framed in contemplation of the probability that Chinese laborers would attempt to enter the United States from the Sandwich Islands, from Canada, Mexico, Australia, and even from Europe, just as they have in fact been doing, and it was intended to exclude all such, and provide for their deportation, even though by reason of their expatriation any of them should have become entitled to the protection of any other government, and their return to China should be impossible.   To give the narrow construction of the law contended for is but to invite all the thousands of Chinese residents of British Columbia to come this way, and travel at the expense of the United States, whenever for pleasure or convenience they wish to revisit their native land.   There are many cogent reasons for interpreting this act in a liberal manner, and at least in this particular allowing all the latitude and longitude which the words signify.

This is not a new discovery.   From the time of the enactment of the first restriction act until very recently, the courts and officers of the government upon whom the duty of enforcing the law has devolved have

---

[1] Act Cong. Oct. 1, 1888, prohibits any Chinese laborer who had been, or was then, or might hereafter be a resident within the United States, and who had departed or might depart therefrom, to return to or remain in the United States, and provides that, if such person return, he shall be removed to the "country from whence he came."

given effect to its provisions according to the common and ordinary meaning of the words and phrases in which it is expressed. In this district, while it was under a territorial government, the territorial judges devised the writ now known as a "writ of deportation," and under that form of process the United States marshals, with sanction of the president, attorney general, and state and treasury departments of the United States, returned hundreds of Chinese laborers who had entered from British Columbia back to that country. This being the contemporaneous interpretation of the law, and its correctness having passed unchallenged for years, during which the officers have been active in its execution, I am the more inclined to accept it, and rely upon precedent, as well as the reasons which to me appear to support my decision. In this connection it is proper to mention that the present attorney general has been inaccurately quoted in the newspapers as having given an opinion to the effect that the exclusion act, in the light of the appropriations made by congress for its enforcement, requires all Chinese persons not lawfully here to be deported to China. In an official letter to the United States marshal of this district, dated August 12, 1891, Attorney General Miller says:

"Yours of August 3d, in which you ask whether you are to understand from the Associated Press dispatches that in my opinion there is no appropriation for the pay of deporting Chinese to the province of British Columbia or Canada, is received. I have given no such opinion, and I know of no reason why, if the sentence of the court is deportation to British Columbia or Canada, that sentence should not be executed."

The question at issue being, in my opinion, one of fact rather than a question of law, I must conclude that inasmuch as it has been once decided by a commissioner whose power, under the law, to inquire and decide is as extensive, and in all respects as ample, as that of any judge, this court is not authorized, in a proceeding upon a writ of *habeas corpus,* to grant the petitioner a new trial, or to correct a mere error of the commissioner in his determination of the case. I will therefore order the petitioner to be remanded to the custody of the marshal.

For the purpose of indicating what will be the future action of the court in other proceedings affecting the petitioner, I will now add that in addition to showing continued residence in British Columbia for a considerable time, and the existence of business relations, giving him something more than the character of a transient person or mere sojourner in that country, the petitioner has shown by documents in his possession, issued to him by authority of the dominion government, that he has a valid right, under the laws of that country, to freely return to British Columbia; and it is my opinion that British Columbia is the country from whence this man came, within the meaning of the law under consideration.

The petitioner is cognizant of important and material facts connected with one or more cases in which persons have been held to answer at the next term of this court for alleged violations of United States laws; and upon the written application of the United States attorney to have

the petitioner held as a witness for the United States, instead of suffering him to be taken beyond the jurisdiction of this court under the writ of deportation issued by the commissioner, I will assume the power to vacate the judgment of the commissioner, and set aside said writ. The petitioner will be required to enter into a recognizance, with approved sureties, in the sum of $500, conditioned for his appearance as a witness at the next term of this court, and to remain in the custody of the marshal until he can give such security, and, after he shall be discharged from attendance as a witness in behalf of the government, upon application of the United States attorney this court will issue new process for his removal to British Columbia.

---

[1] Act Cong. Oct. 1, 1888, prohibits any Chinese laborer who had been, or was then, or might hereafter be a resident within the United States, and who had departed or might depart therefrom, to return to or remain in the United States, and provided that, if such person return, he shall be removed to the "country from whence he came."